# AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Kelly L. Suess, Special Agent with the Federal Bureau of Investigation ("FBI"), being duly sworn, deposes and states under penalty of perjury that the following is true to the best of my information, knowledge and belief.

### I.   Background:  The Purpose of this Affidavit, the Initiation of the Investigation, and my Sources of Information

1. I make this affidavit in support of an application of a criminal complaint alleging DARION RAY SEXTON committed and attempted to commit arson by incendiary devices comprising a bottle containing incendiary chemicals (sometimes colloquially referred to as a "Molotov cocktail" device" at a church building used in interstate and foreign commerce in violation of 18 U.S.C. § 1044.

2. I have been a Special Agent with the FBI since August 2009. I am currently assigned to the FBI's Denver Division after spending five years each in the Detroit Division and San Juan Division.  My current duties involve investigating crimes involving civil rights violations, hate crimes, child sexual abuse material, drugs, public corruption, financial fraud, interstate transportation of stolen property, computer fraud, wire fraud, and conspiracies to commit those crimes.  I have received specialized training in the FBI relevant to the investigation of civil rights violations, computer related crimes and many other criminal activities.

3. Throughout this affidavit, I intentionally refer to witnesses and victims by their position, business type, role or other general description.  All of their identities are known to me.

4. The facts set forth in this affidavit are based on my personal knowledge as the investigation's Case Agent; knowledge obtained from other individuals including law enforcement personnel, my review of documents, reports and other evidence.  Except as explicitly set forth below, I have not distinguished in this affidavit between facts of which I have personal knowledge and facts of which I have hearsay knowledge.  The information contained within this affidavit does not represent every fact learned by law enforcement during the course of the investigation.  Rather, I have only included information sufficient to establish probable cause for the requested criminal complaint. When I describe an interview with a witness, the interview is described in sum and substance and in pertinent part and is not verbatim.

### II.   There is Probable Cause to Believe that DARION RAY SEXTON committed the SUBJECT CRIMES

#### A.   Background: the VICTIM CHURCH

5. Based on the website of VICTIM CHURCH, which is a church in Loveland Colorado known to me, as well as interviews with PASTOR, whose identity is known to me, I have learned the following facts about the VICTIM CHURCH:

   a. VICTIM CHURCH is a church within the Wisconsin Evangelical Lutheran Synod (WELS) that he been holding religious worship services since March 1994. WELS is the third

largest Lutheran Church body in the United States with congregations in all fifty states and several foreign countries.

   b. VICTIM CHURCH is the owner of a building in Loveland, Colorado. The building is used in interstate commerce and is a home to activity in interstate commerce. VICTIM CHURCH has a mortgage on the church property with a bank involved in interstate commerce, sells church merchandise to raise funds for its religious activities, purchase religious documents and materials from the Wisconsin Evangelical Luther Synod for use in its religious activities, receives donations from its members for use in its religious activities, hosts events for its members like potluck dinners and wedding receptions, and has received donations from a Homeowners Association for the use of its property.

   c. During an interview on January 20, 2023 PASTOR told me, in sum and substance and in pertinent part, that the fire damage in the basement of VICTIM CHURCH described below will affect its ability to continue to use that area to pursue its religious services and disrupt its ability to offer the space for church events.

   **B.** **The attempted arson of the VICTIM CHURCH on the night of January 19, 2023**

  6. On January 19, 2023, at 11:56pm, Loveland Fire and Loveland Police Officers were dispatched to a structure fire at VICTIM CHURCH, located in Loveland, CO. Upon arrival, firefighters noticed an active fire at the front door to the church, located on the southeast facing side of the structure, and they were able to extinguish it. Upon an initial search of the church, evidence of a secondary fire was discovered in the basement of the church. This second fire appeared to have been extinguished by an emergency sprinkler located on the ceiling of the basement.

  7. Once both fires were suppressed, investigators noticed that there was a broken watermelon rum bottle by the front door that appeared to have burnt denim inside of it. There was a broken window in the basement and two additional bottles inside, one glass and one plastic. The plastic bottle appeared to contain the same burnt denim inside of it.

  8. A broken glass bottle recovered from the front door of the church, which displayed lettering consistent with "Admiral Nelson's Premium Watermelon Rum", contained a denim material in the neck of the glass bottle. An odor consistent with the smell of gasoline was noted within the area of fire damage. The denim material acted as a wick and was capable of igniting flammable liquid vapors. The outer pane of glass for the front door was broken and there was smoke staining to the brick wall and door frame. There was thermal damage, consisting of melting, to the rubber door sweep and composite material that comprised the door threshold.

  9. The fire in the basement caused smoke staining to the concrete foundation wall and thermal damage to the wood framing of the basement window. A barred window on the northwest side of the building was broken. There was thermal damage, consisting of charring, to message boards and a pop-up canopy stored in the basement. A broken glass bottle, similar to the bottle found on in vicinity of the front door of the church, with the same lettering "Admiral Nelson's Premium Watermelon Rum", was located on the basement floor. Fragments from this bottle did not appear to

have sustained any fire damage or discoloration. Additionally, a partially melted plastic bottle was recovered from just inside the basement window. An odor consistent with gasoline was noted within the area of fire damage and from the unidentified liquid recovered from a plastic bottle, which also contained a wick consistent with denim material as was observed in the incendiary device recovered from the front door.

10. According to initial analysis by responding agents of the U.S. Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF), the areas of fire damage were separate. The fire occurring at the front of the church could not have spread via conductive, convective or radiant heat transfer to cause ignition of combustibles located in the basement of the church or vice versa; multiple areas of fire origin and the recovery of an incendiary device are indicative of an incendiary fire.

11. There was snow on the ground during this incident and when investigators looked around the outside of the church, footprints were discovered. These footprints were set apart from the emergency responder footprints as they were longer strides as if someone was running or moving at a quicker pace. These footprints also went towards the direction of the neighborhood on the east side of the church, whereas emergency responder footprints came from the church parking lot and did not come from the neighborhood.

12. Investigators followed these footprints to a sidewalk area on Aries Drive, and specifically to an address known to me and referred to here as the Sexton Residence. These footprints were located leading to and from the front and back door at this residence. The footprints also went in both directions to and from the church. Based on the footprint pattern, the shoeprint measured 11 inches long.

13. VICTIM CHURCH had a Ring video doorbell camera next to the front door of the church. Investigators reviewed this video, specifically a motion-activated video dated January 19, 2023, at 11:27pm. The video shows an unknown person approach the front of the church and throw an item on fire at the front door. The item on fire bounces back at the person and the person picks up the item and throws it at the front door a second time. Flames from the fire then appear on the camera footage and appear to engulf the camera. The person on the video appears to be wearing a light-colored sweatshirt, light-colored pants, and light colored shoes. The person also appears to be wearing a head covering, as well as a mask or neck gaiter that is covering the bottom part of their face.

14. According to a Google Maps study, the VICTIM CHURCH is located less than a quarter mile from the Sexton Residence and can be reached by walking from the Sexton Residence in less than three minutes.

15. Investigators identified one of the residents the Sexton Residence as DARION RAY SEXTON, who was born in 2001 and who matches the build of the unknown person seen on the Ring camera. SEXTON lives at this residence with MOTHER and STEPFATHER, whose identities are both known to me.

16. On January 20, 2023, SEXTON was observed returning to the Sexton residence in a red Nissan pickup, temporary tag 4839523. Shortly thereafter, FBI Special Agents contacted

SEXTON, who agreed to a consensual interview. During the interview, SEXTON told agents the following, in sum and substance and in pertinent part:

      a.      He left the Sexton Residence between 11:00pm and 11:30pm on January 19, 2023, because he often takes walks around the neighborhood at night due to insomnia and depression. Additionally, he wanted to smoke, and his parents do not approve of SEXTON smoking at the residence. SEXTON said prior to leaving, he consumed a couple of alcoholic drinks called "FOCO LOCO".

      b.      SEXTON indicated he left his residence through the back yard, walked south on its street of address and turned left to head east on E 1st Street. He then turned left to head north on North Sculptor Drive, turned left again to head southwest on Corvus Drive. During this leg, he walked past the VICTIM CHURCH, and did not note anything unusual with the church. SEXTON said he did see someone walking by the church in the opposite direction, but could not describe this person. SEXTON said his walks normally take 20 minutes.

      c.      When asked what SEXTON was wearing on January 19, 2023, SEXTON said he was wearing a light colored sweatshirt, light colored sweatpants, a beanie, and a neck gaiter or turtleneck type piece of clothing that can be used to cover someone's mouth. SEXTON could not describe what shoes he was wearing, but allowed investigators to measure the shoes he was currently wearing which measured 11 inches long but did not appear to have the same tread on the bottom as the suspect footprints.

17.      In a canvas of the neighborhood, investigators contacted NEIGHBOR, who resides across the street and south of the SUBJECT PREMISES and whose identity is known to me. NEIGHBOR has a camera on the exterior of his house. During an interview with FBI Special Agents, NEIGHBOR provided a clip from his video footage, which he stated was timestamped 11:39pm, that shows a person walking across the street from the area of NEIGHBOR's residence. According NEIGHBOR, he checked with STEPFATHER, who said he had similar video on cameras on the exterior of his house that show SEXTON leaving the house around this time period

      **C.**      **The Search of Sexton's Residence and Subsequently Acquired Information Informing my Probable Cause Belief that DARION RAY SEXTON attempted to burn down a church**

18.      On January 20, 2023, I participated in the execution of a federal search warrant at the Sexton Residence. According to records checks, this is the residential address of the defendant, DARION RAY SEXTON. At the time the search warrant was executed, at approximately 10:00pm, SEXTON, MOTHER, and STEPFATHER were the only individuals present at the residence.

19.      During the search, FBI and ATF personnel recovered from the residence various items to include the following items:

      a.      One pair of Nike shoes, with a tread pattern similar in size and shape to the footprints traced from VICTIM CHURCH to SUBJECT RESIDENCE;

   b. One pair of torn blue jeans similar in appearance to the fabric used as wicking material in the incendiary devices;

   c. Light colored clothing that smelled of a strong chemical odor;

   d. One butane lighter, and;

   e. A Gatorade bottle, similar to the plastic bottle used recovered from VICTIM CHURCH, which was found in the trash can with a strong chemical odor.

  20. On January 21, 2023, after issuing a press release asking for information, the Loveland Police Department was notified through their tip line of a WITNESS 1, whose identity is known to me. During the call to the tip line, WITNESS 1 explained that WITNESS 1 had spoken to SEXTON through SnapChat conversations. On the evening of January 19, 2023, WITNESS 1 received a video selfie of SEXTON at approximately 9:00 PM in which SEXTON stated "yeah, I might go set a church on fire." WITNESS 1 confronted SEXTON, saying "isn't that a hate crime?" WITNESS 1 fell asleep shortly after this message and did not check the SnapChat account until the next day when WITNESS 1 was at work on January 20, 2023. SEXTON left another video selfie but WITNESS 1 scrolled past the video and did not view the video. WITNESS 1 did see that that SEXTON sent a SnapChat text to WITNESS 1 asking the WITNESS 1 to not tell anyone about what he said last night. In an interview with me and the Loveland Police Department on January 22, 2023, WITNESS 1 repeated, in sum and substance, the initial tip.

  21. In an interview with WITNESS 2 by me and the Loveland Police Department, WITNESS 2 confirmed that SEXTON made strange comments regularly and provided an example of SEXTON stating he was going to go kill a homeless person. WITNESS 2 confirmed that SEXTON drank all kinds of different types of liquor and regularly brought these liquors to house parties.

  22. The Loveland Police Department has also spoken with WITNESS 3, whose identity is known to me. WITNESS 3 has known DARION RAY SEXTON for several years and provided information, in sum and substance and pertinent part, related to his use of snapchat and prior instances or violence or threats of violence against protected groups. WITNESS 3 was interviewed by the Loveland Police Department on February 15, 2017. I obtained a copy of the related police report on January 23, 2023. The report states, among other things, that on February 15, 2017, during an interview with an LPD officer at SEXTON's residence, SEXTON acknowledged posting a threatening message on the social media platform Snapchat. Specifically, SEXTON indicated he grabbed the phone of WITNESS 3 and posted a message to WITNESS 3's Snapchat profile in which SEXTON instructed the recipients of the message not to come to school tomorrow because he was going to, according to the report "…shoot the N's (Black people)". SEXTON stated this was a joke between him and WITNESS 3, and that they quickly deleted the message to get rid of it. SEXTON indicated he would not do anything like this, had seen other friends post jokes like this before and did not really think about it before he did it.

23. There is additional evidence showing that SEXTON has history of violence, in addition to just violent threats. On June 26, 2022, LPD spoke with WITNESS 4, who reported being assaulted by SEXTON the previous evening, on June 25, 2022. More specifically, WITNESS 4 reported meeting SEXTON on the dating platform Tinder and was engaged in sexual intercourse with SEXTON at his former residence in Loveland, CO, which is known to me. At that former residence, WITNESS reported that SEXTON struck her on the right side of her face. Following the strike, the two stopped having sex and WITNESS 4 left the residence. WITNESS 4 indicated the strike hurt a lot, described the pain as a 6 on a scale of 0-10, and said her face till hurt the next day. WITNESS 4 indicated that prior having sex with SEXTON, she smoked what she originally believed to be marijuana out of a pipe SEXTON provided. WITNESS 4 indicated she may have been drugged, as she had a high tolerance for marijuana but felt higher than she ever had before after smoking from SEXTON's pipe. WITNESS 4 indicated the sex was consensual and that she was not sexually assaulted, but had not consented to SEXTON hitting her. WITNESS 4 indicated she did not wish to press charges. An LPD officer spoke with SEXTON the next day, on June 27, 2022, at his residence. SEXTON's account of the incident was similar to that of WITNESS 4. SEXTON indicated during sexual intercourse, he began choking WITNESS 4 for pleasure and then struck her in the face, wrongly assuming he had her permission to strike her. SEXTON was apologetic, indicated he liked rough sex and did not sexually assault WITNESS 4 nor wish to make her uncomfortable. No charges were ever filed against SEXTON following the incident.

24. On January 22, 2023, an LPD Detective spoke with the on-duty manager at the Liquor Max Warehouse store located at 1497 E. Eisenhower Boulevard, Loveland, CO 80537. During the conversation, the manager located in store records a receipt, dated January 17, 2023 at 5:07pm, which recorded the purchase two identical items, listed as "BB ADMIRAL NELS WATERMELON .750L", prices at $7.99 each, for a total charge including tax of $17.05. The receipt listed the payment method as a Chase Visa, Account: 8100, listing a cardholder name consistent with the identity of STEPFATHER. The LPD Detective viewed store video surveillance footage captured at the time of the purchase, in which a male individual similar in appearance to SEXTON can be seen purchasing the items. The LPD Detective located like items within the store and noted they were labeled "Admiral Nelson's Premium Watermelon Rum", and were otherwise similar in size and appearance to the broken glass bottles collected by law enforcement from the VICTIM CHURCH.

### III. CONCLUSION

25. Based on the information set forth above, I submit there is probable cause to believe that DARION RAY SEXTON did knowingly and intentionally and maliciously damage, and attempt to damage and destroy, by means of fire and one or more explosives, real property used in

. . . .

. . . .

. . . .

. . . .

. . . .

interstate and foreign commerce and in an activity affecting interstate and foreign commerce, to wit: VICTIM CHURCH

      I declare under the penalty of perjury that the foregoing is true and correct to the best of my knowledge and belief.

                                              Respectfully Submitted,

                                              *s/ Kelly L. Suess*_____
                                              Kelly L. Suess
                                              Special Agent
                                              Federal Bureau of Investigation

Sworn to before me by telephone on January 23, 2023.

_/s/ James P. O'Hara_
Hon. James P. O'Hara
United States Magistrate Judge

**Reviewed and submitted by Bryan David Fields, Assistant United States Attorney.**