UNITED STATES DISTRICT COURT
DISTRICT OF COLORADO

UNITED STATES OF AMERICA,

           Plaintiff,

vs.                                                                  Case No. 23-mj-00026-JPO

DARION RAY SEXTON,

           Defendant.

## DETENTION ORDER

**A.**     **Order for Detention.**

On January 27, 2027, the undersigned U.S. Magistrate Judge, James P. O'Hara, conducted a hearing on the government's motion for pretrial detention of the defendant, Darion Ray Sexton (ECF No. 7). Pursuant to 18 U.S.C. § 3142(f), the government's motion is granted. Defendant shall be detained pursuant to 18 U.S.C. §§ 3142(e) & (i).

As noted at the end of the proceedings on January 27, defendant may file a motion to reopen the detention hearing if the particulars of his very general proposed release plan can be worked out to the satisfaction of the government and the court. The undersigned presumes any such motion would be decided by the magistrate judge then having the duty rotation in the District of Colorado. But if both defendant and the government request, the undersigned will endeavor to make himself available.

**B.**     **Statement of Reasons for Detention**

The government contends defendant's release would pose both a serious flight risk and a danger to the community.

The government has not demonstrated by a preponderance of the evidence that no combination of conditions of release will reasonably assure the appearance of defendant as required. There is nothing in the record that persuades the court that defendant poses a serious flight risk. Defendant has no criminal-case history. Thus, obviously he has never failed to make a required court appearance. There is no evidence that defendant has the inclination let alone the means to flee. And the court is wholly unpersuaded by the government's argument that, were defendant to act on his prior suicidal ideations, justice not being formally adjudicated would constitute "flight."

On the other hand, at least given the current state of record, the government has demonstrated by clear and convincing evidence that no combination of conditions of release will reasonably assure the safety of the community. Specifically, and without limitation of the foregoing, defendant poses a serious risk of continued irrational acts of violence toward others.

During the detention hearing, defendant asked the court to deny the government's motion, with understanding he would be released once certain logistical problems are ironed out, i.e., defendant would go into in-patient treatment through her parents' health-care insurance, with the treatment to be of the dual assessment variety, i.e., to assess not only his drug and alcohol-abuse but also the underlying conditions. Notably, however, the details of exactly what kind of treatment would be provided and under what kind of security were sketchy at best.

### C. **Findings of Fact.**

The court's findings of fact in connection with the decision to detain defendant are based on the record presented during the detention hearing, i.e., the information contained in the Pretrial Services report, proffers of evidence by the parties, and arguments by counsel, including but not limited to the following:

(1) Nature and circumstances of the offense charged in the present case: causing damage by fire an explosive to real property (defendant threw two "Molotov cocktails" at a church in his neighborhood).

(2) Although of course defendant's innocence is constitutionally presumed, it appears the government has a very strong case against defendant.

(3) The history and characteristics of defendant, including:

> Defendant appears competent to proceed. But it is also obvious he suffers from mental problems affecting his ability to act in a rational and non-violent manner toward others. Although he's only 21 years old and has no arrest record, it appears his violence toward others has increased of late. As a freshman in high school, he posted a social-media message warning his classmates not to come to school because he was going to shoot the "N's," with the "N" being shorthand for a racist slur. According to the FBI, one witness more recently reported defendant threatened to kill a homeless person. And then the instant offense of arson was committed this month, and that act clearly was planned given that defendant told a friend a few hours earlier that he was going to burn down a church. There is strong evidence that defendant lied to law enforcement about his

involvement in the church arson.

At this point, the court doesn't have the benefit of a full-blown psychiatric evaluation of defendant. But one doesn't have to be a psychiatric expert to see a troubling indication of the risk of increasingly violent acts.

Defendant has significant family ties. But clearly his mother and stepfather, with whom he lives, haven't been able to deal effectively with his increasingly irrational and violent behavior. The court has zero confidence that defendant's parents (or any parent for that matter) could effectively curb defendant's violent tendencies if he were placed on home detention. Nor is the court presently persuaded placing defendant in an unsecured treatment center or halfway house with electronic monitoring would adequately address the serious risk of violence that he presents.

In-patient mental health treatment <u>might</u> be an appropriate way to deal with the risk of danger to the community presented by defendant. But the court hasn't yet been provided enough concrete information to approve such an arrangement. Among other things, the court needs to be provided details concerning the treatment center, what treatment is anticipated, the qualifications of the treatment providers, what assessment the providers have made suggesting that defendant would not pose a risk to other patients, the security arrangements (if any) at the treatment, what information (if any) the government and the court's Pretrial Services office would get from providers, etc.

(4) The threat of continued violence toward others if defendant were released poses a serious risk of danger to the community.

## D. **Additional Directives.**

Pursuant to 18 U.S.C. §§ 3142(i)(2)-(4), the court directs defendant be committed to the custody of the Attorney General for confinement in a corrections facility separate, to the extent practicable, from persons awaiting or serving sentences or being held in custody pending appeal. Defendant shall be afforded reasonable opportunity for private consultation with counsel of record in this case. On order of a court of the United States, or on request of any attorney for the Government, the person in charge of the corrections facility in which defendant is confined shall deliver defendant to a United States Marshal for the purpose of an appearance in connection with a court proceeding.

Dated:   January 30, 2023              s/ James P. O'Hara
                                       James P. O'Hara
                                       U.S. Magistrate Judge